## McMILLAN *v.* VISCHER.

WHERE a redemptioner, under the statute, pays to the Sheriff an excess of money, under protest as to the excess, the payment is not compulsory.

In such case the Sheriff is the bailee of the redemptioner as to the excess, who may recover it back on demand, the money not having been paid over to the redemptionee.

Under our statute a redemptioner is not required to pay interest on the purchaser's bid, over and above the eighteen per cent.

Nor is he required to pay interest on the whole judgment of the purchaser, but only on the excess over and above the bid.

Where a judgment is against two, one only of whom appeals, and the appeal is dismissed with twenty per cent. damages, the damages, with the costs, do not become part of the original judgment, and the redemptioner is not bound to pay them when he redeems from a sale under the judgment.

The Clerk below can issue execution for these damages and costs.

APPEAL from the Twelfth District.

The facts appear in *McMillan* v. *Richards*, (9 Cal. 365.) The precise items of overpayment, as claimed by plaintiff here, are:

McMillan *v.* Vischer.

| | |
|---|---:|
| 1. Ten per cent. per annum of bid, $16,000 | $800 00 |
| 2. Five per cent. per month on principal | 2,220 00 |
| 3. Five per cent. on deficiency, $1,727 76 | 518 32 |
| Total | $3,538 32 |
| 4. Twenty per cent. from Sup. Court | 2,698 53 |
| Total | $6,236 85 |

5. To this should be added such portion of the officer's per centage on sale as was computed upon the Supreme Court, 20 per cent.

Defendant had judgment.   Plaintiff appeals.

*Shafters, Park & Heydenfeldt,* for Appellant.

The action for money had and received, is an equitable one, and is maintainable where the defendant is in possession of money which he retains from the plaintiff against equity and good conscience.   In this case the plaintiff claims that the defendant is in possession of a large sum of money belonging to the plaintiff, and which was illegally exacted of him, under circumstances which made the transfer from plaintiff involuntary, and exempts the act from the operation of the maxim " *volenti non fit injuria.*"

1. There can be no question but the claims of interest specified in items one and two, were without foundation.   The Practice Act, (Sec. 231,) is explicit that the bid and eighteen per cent. thereon, is the limit.   If there is any balance of the judgment, that must be likewise paid.   Whether there was any such balance depends upon the propriety of charging the twenty per cent.—two thousand six hundred and ninety-eight dollars and fifty-three cents, upon the land—for this constituted the whole of the alleged deficiency, and nine hundred and seventy dollars and seventy-seven cents besides.   If this twenty per cent. was not a lien upon the land, but a personal judgment against Randall alone, then items three and four were alike erroneous.   Then as to this twenty per cent.

The appeal in *Cary* v. *Osio & Randall,* was taken by Randall alone.   Under the old system this could not have been done without summons and severance.   (6 Bacon's Abridg. Tit. Summons F; 1 Arch. 232; *Williams* v. *Bank, U. S.* 11 Wheat. 414; *Owings* v. *Kincannons,* 7 Peters, 399; 1 Arch. P. 222; 2 Saun. 101, Note.)   If the Practice Act, (Sec. 336,) has allowed one judg-

ment debtor to appeal, the appeal and all subsequent conse-
quences against the Appellant affected himself alone. (*Geraud*
v. *Stagg*, 10 How. Practice, 369; *Farnell* v. *Calkins*, 10 Bar. 348,
and cases cited; *Palmer* v. *Lawrence*, 1 Seld. 455; *Southard et als.*
v. *Russel*, 16 How. U. S. 547, and cases cited.)

In *Cary* v. *Osio & Randall*, the *remittitur* was upon a dismissal
of the appeal merely, the judgment below was untouched. The
proper redress upon such dismissal was to have issued execution
at once against Randall for the costs of the appeal, including
damages. (*Eng.* v. *Crook*, 6 How. Pr. 462; *Marysville* v. *Buchan-
an*, 3 Cal. 212.) That we being strangers to the judgment of
*Cary* v. *Osio & Randall*, are not affected by it is evident. (*Mont-
gomery* v. *Tutt*, 12 Cal.)

The remaining question to be considered is, was the payment
of this sum of six thousand two hundred and thirty-six dollars
and eighty-five cents and item five, involuntary within the legal
sense of that term.

That it is required to show inevitable necessity, absolute physi-
cal compulsion will hardly be pretended; it is enough if any
danger or harm is immediately impending over either person or
property. In this case not only was such danger impending,
but the plaintiff apprehended it, and yielded to the demand
made upon him solely in consequence of such apprehension.
The animus of the plaintiff is apparent, his notice of intention
to redeem is the statute index of the motive which brought him
to the Sheriff's office on Dec. 13, 1856.

The only answer that can be made must be that the plaintiff
had other remedies, that he might have tendered the amount
legally due, and that having paid a large sum, such payment
must be considered as voluntary. This is contrary to all the
cases.

The general doctrine is thus stated : (1 Comyn Dist. 185) :
"Assumpsit for money had and received lies when money has
been gotten by extortion, or oppression, or undue advantage
taken of the plaintiff's situation contrary to laws for the protec-
tion of persons under those circumstances." (*Astley* v. *Reynolds*,
2 Strange, 915.) Money payed for the redemption of pawned
goods was recovered, notwithstanding that the plaintiff paid it
with his eyes open. (*Fullman* v. *Dower*, 6 Esp. 26; *Irving* v. *Wil-*

McMillan *v.* Vischer.

*son et al.* 4 T. R. 485 ; *Smith* v. *Bromley,* 2 Doug. 696 ; *Cockshott* v. *Bennett,* 2 S. R. 763 ; *Smith* v. *Cuff,* 6 Maule & Selw. 160 ; *Wilson* v. *Ray,* 37 E. C. L. 50 ; *Snowdon* v. *Davis,* 1 Taun. 358 ; *Hills* v. *Street,* 15 E. C. L. 358 ; *Shaw et al.* v. *Woodcock,* 14 Id. 14 ; *Ashmoe* v. *Wainwright,* 42 Id. 938 ; *Scarfe* v. *Halifax,* 7 Mees. & Wel. 288 ; *Smith* v. *Sharp,* 12 584 ; *Cadoval* v. *Collins,* 31 E. C. L. 206 ; *Chase* v. *Taylor,* 4 Harr. & John. 54 ; *Elliott* v. *Swartrout,* 10 Pet. 137 ; *Clinton* v. *Strong,* 9 Johns. 369 ; *Ripley* v. *Getson,* 9 Id. 201 ; *Bates* v. *N. Y. Ins. Co.* 3 Id. 238 ; *Coats* v. *Stewart,* 19 Id. 287 ; *Wisner* v. *Bulkney,* 15 Wend. 321.)

Indeed, so far has the law favored this action, that the mere power, accompanied with an apparent intent of exercising it over the property of another, irrespective of the character of the property endangered, is sufficient to make the payment involuntary. (*Fry* v. *Lockwood,* 4 Cow. 454 ; *Preston* v. *City of Boston,* 12 Pick. 7.)

Duress is instanced by process in the nature of execution running against the person or property of the party, upon which he has no day in Court, no opportunity to plead and offer proof, and have a judicial decision of the question of his liability. A payment made under such stress is not voluntary, even when no levy is made. (*Amesbury W. & Cot. M. Co.* v. *Amesbury,* 17 Mass. 461 ; *Boston & Sandwich Glass Co.* v. *Boston,* 4 Met. 181 ; *Maxwell* v. *Griswold,* 10 How. U. S. R. 242 ; *Borough of Allentown* v. *Seeger,* 8 Harris' Pa. 421 ; *Joyner* v. *School Dist. No. 3,* in Egremont.)

The above cases show :

1. That knowledge that the claim made is illegal, does not make the payment voluntary.

2. That knowledge that the claim is unjust, does not make the payment voluntary.

3. That nothing is necessary but the attempt or threat of enforcing an unfounded claim as against the person or property, to make the payment involuntary.

4. That the existence of a full and apparently adequate remedy at law, as by trover, or replevin, or detinue, or by injunction, or trespass for assault and battery, makes no difference. The wronged party has the right to pay, "relying upon his right to recover his money back."

But it may be said that lands are too fixed a quantity, too solid in substance, to authorize the supposition that they will be lost to the owner unless redeemed.

To this we answer :

1. The title of land is as fleeting and as subject to danger, as any other earthly possession.

2. There is no trace of any distinction taken as to the kind of property which may be the subject of duress, and we appeal, with entire confidence, to the books upon this point.

3. In *McMillan* v. *Richards*, (9 Cal. 365,) this Court says, that we are " entitled to the excess " of our payment over the sum due if we paid by compulsion.

With attention directly pointed to the nature of the property concerning which compulsion was alleged, if the Court considered that duress could not be predicated of land, it is extraordinary that it did not say so. This case further decides, that up to the expiration of the statute time of redemption, the right of redemption stands exactly as it did before foreclosure.

*Hays et al.* v. *Hogan*, (5 Cal. 241,) is directly in point. In that case : 1. The property was real estate. 2. It was in no danger. Yet this Court held originally and upon reargument that the owner might pay under protest and recover the money back. (See, also, *Com.* v. *Hall*, 8 Pick. 440.) "Undoubtedly, if a person pays a demand the validity of which he contests, this cannot be binding upon him as a voluntary payment. (*Cazenove* v. *Cutler et al.* 4 Met. 246 ; *Ex parte Newell*, 4 Hill, 580.) The same rule obtains in England. (*Close* v. *Phipps*, 49 E. C. L. 585.) We do not deny that a payment, made under mere ignorance of the law, or with a perfect freedom of will, under no pressure, is lost, but duress of property exempts from the operation of the rule, *volenti non fit injuria*, and the corresponding one, *ignorantia legis non excusat.* From the giving a mortgage up to the lapse of the six months' statute redemption, the essential nature of the relation of mortgagor and mortgagee is not changed, there is a lien existing in favor of one against the property of the other.

The Cary mortgage, on Dec. 13, 1856, was as as to all questions as to payment, a mere debt, and could be discharged in any way by which debts could ordinarily be extinguished. If any person using the power which that lien gave him for an

improper or inequitable purpose, has received more money than would extinguish the lien, he has gotten money which *equo ex bono* does not belong to him.

If money is paid by me to one without claim, and I express no purpose and avow no object for the payment, the Receiver must hold for my use, and although I have paid willingly, yet the maxim referred to would not prevent my recovery. So, if in paying I expressed a purpose, or avowed an object, then to the extent of accomplishing the purpose, or effecting the object, the maxim would govern, but could not be extended beyond it.

If I give a man money to pay certain debts and he pays them, I am bound, although I afterward ascertain that there was no legal liability; but if there is an excess of money after paying the debts, I must be entitled to receive it back upon the commonest idea of justice. So, if the payment in this case was for the expressed purpose of effecting a redemption, the Appellant is bound to the extent of what was necessary for that object, even although he obtained no title to the land; but for the excess beyond what was necessary to accomplish the purpose, there being no claim for it, and no object in paying it, there can be no reason for calling it a voluntary payment, and no reason for applying the maxim *volenti fit;* it stands precisely upon the footing of money paid without claim or demand, and without any expressed purpose or object.

*McDougall & Sharp,* for Respondents.

I.  The payment was voluntary; and, therefore, there is no cause of action.  The rule as to voluntary payments is so well settled, that a reference to authorities would seem unnecessary; but as Appellant has presented several, which he claims to be in point, we will refer the Court to such authorities as we think meet this case.  Practice Act, (Secs. 230, 234,) provides for the manner in which redemptions are to be effected.  It is the act of the redemptioner exclusively, and a mere tender is, by Section 233, made equal to payment.

In *Ex parte Raymond,* (1 Denio, 375,) the Court say: "A party asking to acquire the rights of a purchaser under this statute, must take care to comply fully with its requirements. - - The papers, in the hands of the Sheriff, showed what sum was re-

quired to be paid, to make a legal purchase of the land, and although the relator and his counsel were present, they were not bound to volunteer anything on the subject. .- -    The matters of fact were equally well known to all the parties, and as to the law, each would determine for himself, and act at his peril." (See *Kelly & Wife* v. *Beers,* 12 Mass. 389.)

That this payment was, in all respects, voluntary, cannot be denied.   The Sheriff had no power, and did not pretend to exert any over McMillan.

It is suggested, that the protest filed with Vischer after the money was paid over, may change the relations of the party.   It is certain, that the protest cannot change a voluntary, into an involuntary, payment; and, from the authorities we shall cite, it is equally clear, that it cannot have any effect upon the rights of the parties.   (*Benson* v. *Monroe,* 7 Cush. 126; *Peterborough* v. *Lancaster,* 14 N. H. 382.)

"When money is paid, with a full knowledge of the facts, or with the means of such knowledge, it cannot be recovered back on account of the payment having been made in ignorance of law."   "When money is paid, it will be presumed to have been paid with a full knowledge of all the facts, in the absence of evidence to the contrary."   (*Fleetwood* v. *The City of New York,* 2 Sandf. 475, 478.)   We ask the attention of the Court to the learned argument in the opinion in this case.   The opinion was delivered by Judge Sandford, and his opinion, apart from his argument, is entitled to great consideration.   To the same effect are the following authorities :   (*Abell* v. *Donylan,* 4 Denio, 305; *Silliman* v. *Wing,* 7 Hill, 159; *Wyman* v. *Farnsworth,* 3 Barb. 369; *Supervisors of Onondaga* v. *Briggs,* 2 Denio, 26; *Mayor of Baltimore* v. *Lefferman,* 4 Gill. 425; *Ege* v. *Koontz,* 3 Barr. 109; *Roberson* v. *City Council of Charleston,* 2 Rich. 317; *Osborne* v. *Danvers,* 6 Pick. 98; *Caldwell* v. *Peden,* 3 Watts, 327; *Rawson* v. *Porter,* 9 Greenl. 119.)

The case of *Silliman* v. *Wing,* (7 Hill. 159,) is, in substance, the same.

The cases cited by the counsel for Appellant are all, in their features, so distinctly different from the case at bar, that we do not feel justified in attempting a particular review.

II.   The second, third, fourth, and fifth, items excepted to,

McMillan v. Vischer.

were properly charged. The third item is for the interest on the balance of the original indebtedness, as determined by the decree, and is as much a part of the original debt as the balance of the principal sum. The fourth item is the twenty per cent. added to the judgment or decree by this Court. For the relation of this item to the original decree, we will refer to *Peyton v. Brooks,* (3 Cranch, 92,) in which it was held, that damages and costs, awarded in the Appellate Court, became a part of the original judgment, that "the judgment opens to receive them." This was a question of costs; but it must be remembered, that according to the rule of the common law, all costs were damages, and they were awarded to the party wronged by litigation and delay, just as are the damages allowed by way of penalty by this Court. Originally, all costs were allowed by way of penalty, as well as damages. (*Shay v. Tuolumne Water Co.* 6 Cal. 286; *Sizer v. Many,* 16 How. 103.)

In *Reynolds v. Lammond,* (3 John. 540,) "it was contended, that the judgment for costs on the reversal, being subsequent to his enlistment, no execution could issue against the defendant." "*Per curiam :* The costs must be considered as referring back to the original judgment."

In *McMillan v. Richards et al.* (9 Cal. 417,) the Court say of the protest, in this case : " The words, 'I protest,' whether made orally, or in writing, were not clogs upon the absolute dominion of the officer over the money. He could have paid the same to the purchasers immediately, or on the following day, or at any time during the week."

If the defendant—Respondent—had dominion over the money then, when since, by what act, has he lost it? He was the agent of the person for whose benefit payment was made. He has paid over to him. He has done so under the direct instructions of this Court, as to the law of his position; and we cannot discover any case in the books, or any rule of law, which will justify a recovery against him, and compel him now to account for moneys paid to him on account of John G. Hyatt.

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

The plaintiff in this case sues the defendant, who was Sheriff

of Marin County, for an excess of money paid by the plaintiff to him to redeem certain real estate once belonging to one Ozio, which property one Cary had bought under judgment against Ozio, and which the plaintiff had a statutory right to redeem. The payment was made under protest as to the excess.

It is contended that this was a voluntary payment, and that the rule of *volenti non fit injuria* applies.

If we conclude that the plaintiff, in order to save the property, which would otherwise have been lost, paid this excess of money, and that the redemptionee was not entitled to it, and that the Sheriff has no sort of claim to it, it would seem that the rule of law which gave it to the redemptionee or to the Sheriff, would be harsh and unjust. We do not regard this payment as compulsory. The case of *McMillan* v. *Richards*, (9 Cal. 368,) determines that question. The plaintiff was under no obligation to pay the money. It is true, he may have conceived it to be his interest to do so, but he was under no restraint. By the payment, he secured the property. But the Sheriff receiving the money, was acting under a limited statutory authority. He may be considered as the agent of the redemptionee in receiving this money. But he was agent only to the extent of his authority. He was authorized to receive so much money as the law prescribed for the redemption—no more, nor less. If he received less, he was not the agent of the redemptionee at all. The act would have been perfectly nugatory; the plaintiff could have recalled his money, and the redemptionee would have got the land free from any claim of the plaintiff. If he received more, the redemptionee was not entitled to it. The redemptionee gave him no authority to collect and hold for him any excess over the sum fixed by law for the redemption.

In some of the States, the Clerk is authorized to receive money on judgments—as the Sheriff may on executions. If a defendant were to pay him more than the sum due, protesting against the excess, we apprehend the Clerk could not keep the excess. Or, if a Receiver in the Land Office should charge one dollar and fifty cents per acre for land entered, and the party desiring to secure his claim without further trouble, should pay it, protesting he only owed one dollar and twenty-five cents per acre, we presume that the Receiver would not be entitled to keep the money.

McMIllan *v.* Vischer.

But the question may rest on other grounds.  The Sheriff acts as the agent of the plaintiff and redemptionee.  In receiving the money and giving the certificate to the redemptioner, he acts for him and as his agent.  He was only authorized by the law to receive a given amount of money, but the plaintiff, knowing this, paid him more; but as only part of it was coming to the redemptionee, who had not authorized him to receive more than was due him, the plaintiff directs the Sheriff to hold that excess *for him,* and to his use.  Such case is not different from that of a man giving another money to be applied to a particular purpose, and with directions to pay back to him the balance, if there should be any left, after fulfilling the purpose.  In which event, the party receiving would have no pretense for holding on to all.

We think that the Sheriff, as to this excess, was not the agent of the redemptionee at all; that it was not intended by the payor to make a gift to the officer, and that he has no title to it; therefore, he may be regarded as the bailee of the plaintiff, who may recover back the money on demand.  There is no pretense that the Sheriff ever paid the money over to the redemptionee.

2. The next question is as to the amount.  By the 231st Section of the Practice Act, a redemptioner may redeem from a purchaser by paying eighteen per cent. thereon in addition to the bid.  This was intended to cover the whole sum—except assessments and taxes—required, and there is no pretext for adding interest on the purchaser's bid.  In this case, it was added, at the rate of ten per cent. per annum.  There is as little ground for charging interest at five per cent. per month on the judgment of seven thousand four hundred dollars.  If there was any excess in the original judgment over the amount of the purchase, such excess will draw five per cent. interest per month.

The twenty per cent. damages on the appeal ordered by the Supreme Court were improperly added to the judgment below, the appeal having been taken by Randall alone to this Court.  In *Cary* v. *Ozio & Randall,* the *remittitur* was upon a dismissal of the appeal.  This made the Appellant responsible for these damages as on a judgment rendered by the Supreme Court, but they did not enter into, and form a part of, the original judgment appealed from.  The Clerk below might issue execution for the costs of the appeal and these damages, but this would not enter

into, or form a part of, the judgment below.   Nor should damages be computed on the costs.

Upon these principles, the Court below can enter the appropriate judgment, and the judgment is reversed and the cause is remanded for that purpose.